May it please the court I'm Lawrence Padway I represent the appellant Neil Sorger. The issue in this case is the pre-existing condition clause for a supplemental long-term disability benefit. At article 5.3 I'm having trouble hearing you I don't know why we're having so many sound issues this morning if you can speak directly into the microphone please. Okay is this better? Yes thank you. Okay the plan says such supplemental long-term disability coverage shall be subject to pre-existing condition limitations as established from time to time by the claims administrator. There is no dispute the claims administrator never established a pre-existing condition limitation. The summary plan description contains a pre-existing condition limitation and that was incorporated into the plan but that doesn't work for a few reasons. First the summary plan description is based on the plan as of January 1 2011 and that's page 79 of the record of the exodus. But the plan was amended and restated and a new plan document which is the one that I read from is effective January 1 2013. So there was a change and in the plan document that makes the old summary plan description on that issue obsolete it makes it inconsistent. What's the standard review you are arguing we are construing the the terms of the plan document and under aren't you arguing that the VEBA trust is is a separate ERISA plan? Well the VEBA trust is the only thing here that's subject to ERISA because the Novartis plan other except to the extent that it is funded by the VEBA trust is all paid for by general assets of the corporation. Well that's for the that's for the long-term disability not the supplemental. Right. Supplemental is paid for by the VEBA plan and I thought your argument was that the VEBA plan was a separate ERISA plan. Well the VEBA plan is the only ERISA plan. I mean the really I mean the but let me back up one moment. Sorry. Okay so the VEBA trust provides to a way to collect money from employees hold it in trust administer the trust invest the trust assets but it does not define the benefits and so there's benefit plans that become affiliated with and funded by the VEBA trust and a list of those is that page 331 of the excerpt and one of those plans is the long-term disability income protection plan for Sandoz Pharmaceuticals which after a variety of name changes is what's funding is the benefit that we're talking about here. So the VEBA plan is designed so that it has to be supplemented by something that describes the benefit and whether you want to say well that's really two different plans or it's all one plan I don't think makes the difference but the VEBA plan does not provide for discretion and there's nothing in the record that shows the VEBA plan ever adopted anything from the Novartis plan that granted discretion. So no I don't think there is discretion. When you refer to the VEBA plan what specific document are you referring to when you're asserting that it does not confer discretion and where in the record is that document? Page 315 of the excerpts and it is the amended and restated Sandoz Corporation Voluntary Employees Beneficiary Association Master Trust and that's and then I think that there are one or two amendments to that which follow it in the record. So the question is whether or not the summary plan description from 2011 is only incorporated by the Novartis plan document to the extent it's not inconsistent and that's in the record at page 271 that says the eligibility for and terms of the disability plan are set forth in this plan document and in the summary plan description for the disability plan which is hereby incorporated into the plan as if fully set forth herein to the extent not inconsistent with the terms hereof. So in 2013 they changed how they were going to do the pre-existing condition clause. They gave that right or that power to that life which never used it and to the extent that the summary plan description that describes the benefits for 2011 may have some may have a pre-existing condition clause in it there's nothing to show how that got there or who would be consistent with the new plan document and to the extent that there may be some ambiguity as to whether they intended to incorporate this inconsistent provision, that would be construed against the drafter. That would be completely what was that? That would be the drafter. If the drafter does something and the rule of construction is, that's their problem. Can we go back to your assertion about the VIVA plan because I'm looking at the document you cited which establishes this master trust and refers to a variety of different plans which are then in the attached schedule that the trust is established for. Doesn't that suggest the trust is a distinct thing from the plans that use the trust? Well, I'm not sure that it matters. You know, plan documents, I said I'm not sure that it matters. Plan documents are, because if we go to the relevant plan document it does confer discretion and so you're relying on this document to get out of that and change the standard of review so I'm trying to And if there was a resolution of the VIVA trust saying we adopt as part of the benefit plans we're going to fund this Novartis plan document in whole, then yeah, then I think there'd be an interesting issue. But, you know, the Novartis plan document, the only part of it that deals with the VIVA trust is the supplemental disability benefit and there is nothing which shows that this amended plan document for the Novartis trust was ever submitted to the VIVA trust or adopted by it. And so it would be their burden to show that, you know, they have the proper paper chain to get that discretionary clause you know, validated by the VIVA trust. Because otherwise they're taking money from the employees under a pretense of a trust that has no discretion. And then adding discretion without any approval from from the one trust that exists. So, but, you know, plan documents frequently are, you know, I mean, the rule is you look at them as a whole and there are lots of plans that have multiple plan documents. In fact, one of the biggest problems in ERISA is sometimes trying to figure out who comes with the plan documents. There's no requirement that they really be described, but the funding source is the VIVA trust. According to Novartis, everything else that they do is funded from their general assets, which means it's not even subject to ERISA. This is the only part of the Novartis plan that's subject to ERISA and there's nothing in this record that shows the VIVA trust authorized discretion. You're down to just a few minutes. Do you want to save the rest of your time? Please. May it please the court, I'm Ron Alberts, representing Novartis and Medline. I think one of the first things we should keep in mind is that what's at issue here before the court is simply the supplemental disability benefits. Mr. Sorger is, in fact, receiving the base benefits of 50% of his pay. So, we're talking about just that additional amount and that additional amount is subject to a pre-existing condition clause in the plan documents. So, when you look at the plan, it's clear that if you have not been actively at work for 12 months, then the pre-existing condition clause kicks in and it's evaluated, as it was here, and there was evidence that Mr. Sorger had, in fact, seen a physician, or actually it was a nurse practitioner, for some of the conditions that ultimately were the basis of his disability. Doesn't he also, though, argue that he was actually actively employed for all of 2013, I believe it is? Well, the thing is he has to be actively employed for consecutive 12 months, and he was not. His argument is, though, that that period of time when he wasn't working, he was still actively employed. Yes, that's his argument. We certainly don't agree with that. And what's your response and why, I guess, is what I'm getting at. Fine. Well, I think you have to give all the words meaning, and if you use the word active, that would imply that he was an active employee, which is something more than someone who is out on disability leave. I think it's just a matter of common construction of the words. It's not defined anywhere specifically. In any event, I think that it's clear when you look at the documents, when you look at the claims documents, and you see the history of what MedlineLife did to determine whether or not there was a pre-existing condition that kicked in. They certainly applied the rules. They used outside consultants. They had a vigorous dialogue back and forth with Mr. Sorter, and I think the plan is clear. These arguments about the VEBA trust simply don't make sense to me, frankly. They get into trial and they still don't. I think the reality is that the VEBA trust is simply a funding mechanism for the benefits, which are actually created in the plan. And whether there was a VEBA trust or not, the benefits are what is at issue here. The VEBA trust simply funds it. Well, didn't MedlineLife find him qualified for supplemental benefits and then took it away and he appealed and reinstated? And then quite some time later decide, well, we're going to go back and look at what happened a long time ago and come to a different conclusion altogether. I don't think I would characterize it quite like that. But yes, essentially, they looked at it. They provided him with the supplemental benefits for the mental health condition. Originally, when they approved him for supplemental benefits, they indicated that you have the supplemental benefits based on a lumbar condition. But that if that condition were to go away or when it expires, if you're left solely with the other condition, then there's an issue. Then we believe there is evidence of a pre-existing condition. And they said that actually in the letter in which they approved the first two years of benefits. Then moving forward to your point that the original benefits expired under the supplemental policy. And then they looked at the benefits that are issued here and they did originally provide those benefits. But upon further review, they found the note in the file saying, well, wait a second. A nurse consultant had been consulted within the look back period and we should take another look at that. And then they reviewed that, determined, well, we have paid him money we should not have and terminated benefits. That happens frequently, to be honest. It's common with disability benefits that they're paid for some period of time until there's a further review. And it's determined, in fact, that the person isn't qualified. Maybe they never were or maybe they are not as of the time of that subsequent review. So that's what happened here. I think it's very straightforward. I have a tough time coming up with lengthy arguments on issues that I think really don't hold any water. I mean, I think when it comes to the, again, when you go back to the VBA trust issue, it just is irrelevant. And the VBA trust itself is a funding mechanism. It shows how this plan was operated. Something clear here that I don't think can be disputed, though I know he is disputing it, is the standard review. And the plan itself, which contains the supplemental disability benefits, clearly provides a grant of discretion, which permits MetLife, as the claims administrator, to have the discretion to construe the terms. The fact that the underlying funding mechanism, this VBA trust, does not have such a provision is irrelevant to me. The only change it makes is that it's clear that the true funding source are the employees themselves who pay money into the VBA trust. But beyond that, I don't think it has much relevance. So, counsel, during the relevant look-back period, there had not been a diagnosis for the particular condition. So we're relying on the consultation. And the medication. Well, the medications, I don't know that there's any record support for the medications. There had not been a diagnosis at that time. Well, no, you're right. The diagnosis, there was no specific diagnosis as to this. But the outside consultants, both of them that were consulted, indicated that the complaints that were being reviewed were specific, were the types of things that are related directly to the disability. Well, were the medications prescribed for that particular condition? The medications were prescribed for the complaints that Mr. Sorter had. And those are the same types of medications that were prescribed for his ultimate disability. So, yeah, I think that while there was not a diagnosis. The medication could be prescribed to treat those conditions, but I thought the record was that it wasn't prescribed for those particular conditions. It was, well, it wasn't prescribed for that specific diagnosis. It was prescribed for the issues that he was complaining of. So while the diagnosis hadn't been made, the specific issues, I mean, you know, when you look at the different ones, and I'm struggling to avoid dealing with some of the more confidential HIPAA-protected issues here. But when you look at the specific medications and you look at how they're being used, and you look at the expert reports that we obtained, the medical reports, they all indicate that those specific medications are the ones that would have been prescribed for the ultimate diagnosis. And that the diagnosis code that was used at the time actually would have included the specific ailment that Mr. Sorter suffered from. Could those medications be used for other issues other than that ultimate diagnosis? I can't say. I presume they could have been used for various. It indicates that they could have been, couldn't they? I believe that's correct. Though, you know, these are the various issues are all interrelated. The various conditions, medical conditions are related to one another. So you're treating many aspects of something that is very related to what the ultimate diagnosis is. If there aren't any further questions, I have nothing. I do have a question about the two clauses in the pre-existing condition rule. Because there's the first clause, which talks about a 12-month delay. And then there's the further clause, two paragraphs later, about a different 12-month delay. Under your reading, is the first one of those effectively surplusage under the way you read the one in the third? Well, no. I think you've got the first. If you're an active employee for 12 consecutive months, then you're obviously going to exhaust the 12-month period that's in the first paragraph, right? Right. So why is the first paragraph there if it just it's totally swallowed by the third one? Well, I think it's the issue of the 12 consecutive months that's an issue of being an active employee for that period. I think if you're, you know, I think that's because the period that's not consecutive. Well, I think that's actually what the plaintiff, what the appellant is arguing. And I don't think that would make sense. I mean, the idea here is, I think, pretty clear. And that is that the employer wants there to be employees who come to work for at least 12 months before they go out and they get this supplemental disability plan. They get, as I've noted, they do. He is receiving, continuing to this day, the base disability benefits. Right. But both of these talk about supplemental, and they both have 12-month periods. And if I understand your argument correctly, the reading of the third paragraph swallows, you could strike the first paragraph and nothing would change in the way this operates. I guess it all depends on the timing of when the disability condition comes up. I mean, here it was early on, but I think that it might have an impact. Depending on how long the individual had worked prior to seeking the benefits. So I think there may be a distinction. I can't articulate it at this moment, but I do think there is a slight distinction between the two paragraphs. Okay. All right. Thank you. If there's nothing more, I thank the court. Thank you. Mr. Padway, you have a little time. Thank you. And I will apologize to my co-counsel who suggested that I make these arguments instead of the one that I did. We were talking about this before. I already met. But let me point out two things. The excerpts at page 145 is the defense medical consultant. I'm sorry. Can you speak up? I'm sorry. It's at page 145 of the record, bottom of the page. The defense doctor says that the medical documentation supports that a bipolar diagnosis was considered as a rule out slash working diagnosis from October 2012 to December 31, 2012. And the claimant was not actively receiving treatment specifically for bipolar disorder. According to the providers, the claimant was started on Zyprexa and other medications, but not treatment. I mean, I think you do have a point with regard to medical treatment, but as I understand it, just consultation alone is sufficient to trigger the pre-existing condition during the look back period. So how do you respond to that? The word for implies intent. And the case is the McClure case, which I think we cite on page 15 of our brief, where someone had, I think it was MS, and was being consulted for symptoms. They weren't recognized as being MS for a while. And this court held, well, he wasn't being treated or consulting for MS because they didn't know that's what it was. So I think the McClure case is right on point on that issue. I think the other issue, since I'm down to 45 seconds, is, yes, this notion in the pre-existing condition rule, you have two paragraphs that make no sense when you put them together because one has to be surplusage. And I think the problem is when they say you have to have been an active employee, usually we talk about active employee meaning at work for the company, but this is not that. This is, you have been an active employee under a plan. And that's at page 65 of the record, of the excerpts. And being an active employee under a plan, to me, means you're paying premiums, whether you're at work or not, or using your disability benefits, has nothing to do with whether or not you are active under the plan. So I think that is, I think that's the simple answer there. In an SPD, it would have to be interpreted in accord with how a reasonable employee would understand and not how aware of it. All right, we've taken you over your time. Thank you very much, counsel, for both sides for your argument today. The matter is submitted. And that concludes our sitting for the week. Court is adjourned.
judges: Nguyen, Burgess, Collins